## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

NANCY LOWERY                                                                    PLAINTIFF

v.                                    No. 4:05CV01751 JLH

TERESA ATKINSON                                                              DEFENDANT

## OPINION AND ORDER

Nancy Lowery brings this civil rights action against Teresa Atkinson in her individual capacity asserting a Fourth Amendment claim pursuant to 42 U.S.C. § 1983 and a supplementary state claim under the Arkansas Constitution. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as to the claims that arise under federal law. The Court has authority under 28 U.S.C. § 1367 to exercise supplemental jurisdiction over the state-law claims. Lowery alleges that Atkinson, a civilian employee of the Arkansas State Police Division of Crimes Against Children, deprived her of the right to be secure in her home against unreasonable searches and seizures when she requested Guy Chief of Police, Tony Hartwick, to seize her home in the course of an investigation into an anonymous report of child sexual abuse. Atkinson now moves for summary judgment. For the following reasons, the defendant's motion for summary judgment will be granted in part and denied in part.

### I. Summary Judgment Standard

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla*

*v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005).  The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party carries its burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.  When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

## II. Facts

On April 14, 2004, a report to the Child Abuse Hotline was made stating that minors were being allowed to view pornographic images on a computer in Lowery's home and that Lowery was aware of it.  The Child Abuse Hotline is a part of the Crimes Against Children Division of the Arkansas State Police.  The complaint was assigned to Atkinson, who was notified of the complaint on April 15, 2004.  Atkinson's responsibilities included investigating allegations made to the child abuse hotline to determine whether the allegations were true or unsubstantiated.  At approximately 1:05 p.m., Atkinson contacted local law enforcement to give notice of the report and to request assistance with the investigation.  Atkinson subsequently spoke to the Guy Chief of Police, Tony Hartwick, who agreed to assist in the investigation.

Hartwick initially spoke with Lowery's son at Guy-Perkins High School.  Lowery's son told

Hartwick that a man, not a minor, had seen a pop-up of a nude man.  The account given by Lowery's son did not substantiate the allegations made in the report to the hotline.  Hartwick then spoke to Lowery, who was also a teacher at Guy-Perkins High School, in her classroom.  Following this discussion, Hartwick, Lowery, and Lowery's son retreated to the Lowery home.  When they arrived, Hartwick entered the home to obtain the computer for evidence as part of the investigation.  Lowery's son disconnected the computer and began to bring it to Hartwick.  Before turning the computer over to Hartwick, Lowery withdrew her consent for him to take the computer.  According to Lowery, she then asked Hartwick to leave.  Hartwick denies that Lowery asked him to leave but admits that Lowery's husband asked him to leave.

Hartwick relayed this information to Atkinson, and the two discussed the possibility of obtaining a search warrant.  According to Hartwick, Atkinson said that Karl Byrd, a trooper with the Arkansas State Police, would obtain a warrant and would be there with it soon.  Hartwick also testified that Atkinson told him to secure the computer and the residence.  Hartwick remained at the Lowery home for approximately two hours.  Eventually, Hartwick called Byrd, learned that he was not obtaining a warrant, and withdrew from the Lowery home.  Byrd testified that Atkinson never contacted him and never asked him to obtain a warrant.  The child maltreatment report was ultimately found to be unsubstantiated.  Throughout April 15, 2004, Lowery and Atkinson never spoke, and Atkinson never visited the Lowery residence.  It is undisputed that Atkinson was not trained in search and seizure law and had no authority over Hartwick.

### III. Section 1983 Claims

Lowery has brought this claim under 42 U.S.C. § 1983 alleging that Atkinson violated her right to be free from unreasonable searches and seizures.  "[T]he essential elements of § 1983

liability [are]: (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 777 (8th Cir. 2001) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403-04, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997)); *see also Okla. City v. Tuttle*, 471 U.S. 808, 829, 105 S. Ct. 2427, 2439, 85 L. Ed. 2d 791 (1985) (Brennan, J., concurring).  In this case, the second element, that Atkinson was a state actor, is not in controversy because Atkinson was a state employee acting pursuant to the Arkansas Child Maltreatment Act.  *See* ARK. CODE ANN. §§ 12-12-501 to -519.  As the other two elements are disputed, the Court will take each in turn.

### A. Deprivation of a Constitutional Right

In her complaint, the plaintiff alleges that she was deprived of the rights guaranteed to her by the Fourth Amendment, specifically the "right of the people to be secure in their persons, houses, paper, and effects, against unreasonable searches and seizures . . . ." U.S. CONST. amend. IV.  In her motion for summary judgment, Atkinson attempts to draw a distinction among Lowery's Fourth Amendment rights, arguing that Lowery has pled facts that allege only an unlawful seizure and not an unlawful search.  However, such facts need not be pled in federal court, as the "essential function of notice pleading 'is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Northern States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1056-57 (8th Cir. 2004) (quoting *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 714 (8th Cir. 1979)).

### 1. Search

Analysis of a claim for unconstitutional search begins with the "well-established constitutional principle that law enforcement officers may not enter a person's home without a

warrant unless the entry is justified by exigent circumstances or the consent of the occupant." *United States v. Conner*, 127 F.3d 663, 666 (8th Cir. 1997) (citing *Steagald v. United States*, 451 U.S. 204, 211, 101 S. Ct. 1642, 1647, 68 L. Ed. 2d 38 (1981); *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380, 63 L. Ed. 2d 639 (1980)).   The exigent circumstances "'exception justifies immediate police action without obtaining a warrant if lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed.'" *United States v. Amburn*, 412 F.3d 909, 915 (8th Cir. 2005) (quoting *United States v. Ball*, 90 F.3d 260, 263 (8th Cir. 1996)).   In this case, Lowery and her son had prepared to turn over the computer if a search warrant were to arrive, and Lowery and her son had given Hartwick "no problems."  (Hartwick's Dep. at p. 16, ll. 13-21; p. 19, l. 14-p. 20, l. 5).  Thus, no lives were threatened, no suspect's escape was imminent, and no evidence was "'in imminent danger of removal or destruction.'" *United States v. Clement*, 854 F.2d 1116, 1119 (8th Cir. 1988) (quoting *United States v. Kulcsar*, 586 F.2d 1283, 1287 (8th Cir. 1978)).

Hartwick's intrusion of the Lowery home could nevertheless have been lawful if the Lowerys consented to it.  Whether consent is freely and voluntarily given is a question of fact for the jury. *United States v. Sanders*, 424 F.3d 768, 773 (8th Cir. 2005).  Furthermore, even if consent is given, it may be withdrawn.  *Id.* at 774.  Nancy Lowery testified that she asked Hartwick to leave. Moreover, it is undisputed that Jimmy Lowery asked Hartwick to leave.  Hartwick did not leave in spite of this request.  (Hartwick's Dep. at p. 20, ll. 18-20; p. 21, ll. 5-6).  The bulk of Hartwick's time at the house took place after at least one unequivocal request to leave.  A genuine issue for trial therefore exists on the issue of consent.  Viewing the facts in the light most favorable to the plaintiff, a jury could reasonably conclude that Lowery's Fourth Amendment rights were violated because of a police officer's entry of her home without a search warrant, exigent circumstances, or her consent.

## 2. Seizure

Atkinson also contends that Hartwick did not effect an unconstitutional seizure of Lowery's property.  As Atkinson noted, "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'"  *Soldal v. Cook County*, 506 U.S. 56, 61, 113 S. Ct. 538, 543, 121 L. Ed. 2d 450 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656, 80 L. Ed. 2d 85 (1984)).  A seizure of a person occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen."  *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 1879 n.16, 20 L. Ed. 2d 889 (1968).  Throughout her deposition, Lowery stated that Hartwick prevented her from using her computer, from having full access to her home, and even from leaving her home.  Thus, there is a genuine dispute of material fact as to whether Hartwick seized Lowery's property or person.

Atkinson argues that, even if Hartwick seized Lowery's property, his actions were nevertheless constitutional.  Relying on *Segura v. United States*, 468 U.S. 796, 104 S. Ct. 3380, 82 L. Ed. 2d 599 (1984), Atkinson claims that "securing the premises while seeking a warrant does not interfere with the possessory interests of the individual."  Atkinson rightly anticipates an argument based on a lack of probable cause, as the *Segura* Court limited its holding to the seizure of premises "on the basis of probable cause."  *Id.* at 810, 104 S. Ct. at 3388.  Here, viewing the evidence in the light most favorable to the plaintiff, there was no probable cause.  Thus, *Segura* is not on point.

Atkinson further relies on *United States v. Van Leeuwen*, 397 U.S. 249, 90 S. Ct. 1029, 25 L. Ed. 2d 282 (1970), arguing that temporary seizures may be constitutional even when the seizure is based on less than probable cause.  Such reliance is misguided.  In *Van Leeuwen*, "[n]o interest protected by the Fourth Amendment was invaded" as no property was seized – it was merely

temporarily detained after the owner had relinquished control by placing it in the mail. *Id.* at 252-53, 90 S. Ct. at 1032.  In stark contrast, in no setting "is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home." *Payton*, 445 U.S. at 589, 100 S. Ct. at 1381-82.  While the suspect in *Van Leeuwen* had no Fourth Amendment protection, there is no place or property where Lowery's Fourth Amendment protection is more secure than her home.  Thus, *Van Leeuwen* is not on point, and a jury could reasonably conclude that Lowery's computer, home, and person were unlawfully seized on April 15, 2004.

### B. Causation and Culpability

The essence of Atkinson's argument in her motion for summary judgment is that she cannot be held liable for the actions of Hartwick.  Her motion states:

> It is undisputed that Atkinson was not present for the interview of Lowery's minor child nor was she present at the Lowery residence during Chief Hartwick's investigation.  It is also undisputed that Atkinson was not Chief Hartwick's supervisor and that she had no authority over Chief Hartwick. . . . Plaintiff can point to no authority demonstrating that a person with no supervisory powers from a completely separate organization can be liable for the actions of another.

(Citations omitted.)  To the extent these statements tend to argue that Atkinson cannot be held vicariously liable for Hartwick's actions, the arguments are correct: the doctrine of vicarious liability does not apply to § 1983 actions.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94, 98 S. Ct. 2018, 2036-38, 56 L. Ed. 2d 611 (1978).

However, Lowery's claims do not seek to hold Atkinson liable for Hartwick's actions. Rather, Lowery seeks to hold Atkinson liable for her own actions on April 15, 2004, a claim that is legally viable in spite of the fact that Atkinson was not present at the Lowery residence or even if she did not have any "supervisory power" over Hartwick.  In the context of § 1983, "Congress did

7

specifically provide that A's tort became B's liability if B 'caused' A to subject another to a tort . . . ." *Id.* at 692, 98 S. Ct. at 2036.   Here, Lowery alleges that Atkinson caused Hartwick to subject Lowery to a tort, and Hartwick's tort has therefore become Atkinson's liability.   The fact that Atkinson was not Hartwick's supervisor – while it might have some bearing on the causation analysis – does not preclude a § 1983 action.   Atkinson has cited no authority that it does.

The issue is whether Atkinson caused the deprivations of Lowery's constitutional rights. "Issues of causation in § 1983 suits are decided by looking to the common law." *Doran v. Eckold*, 362 F.3d 1047, 1050 (8th Cir. 2004), *vacated on other grounds*, 409 F.3d 958 (8th Cir. 2005) (en banc).   The Supreme Court has said that § 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Monroe v. Pape*, 365 U.S. 167, 187, 81 S. Ct. 473, 484, 5 L. Ed. 2d 492 (1961), *overruled on other grounds by Monell*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611.   Courts of Appeals have accordingly followed this direction.   *See, e.g.*, *Murray v. Earle*, 405 F.3d 278, 290-91 (5th Cir. 2005); *Egervary v. Young*, 366 F.3d 238, 248 (3d Cir. 2004).   The Eighth Circuit has even looked to state common law to determine the definition of causation in a § 1983 case.   *See Ricketts v. City of Columbia*, 36 F.3d 775, 779 (8th Cir. 1994).   In Arkansas, "[p]roximate cause means a cause, which, in a natural and continuous sequence, produces damage and without which the damage would not have occurred." *Mangrum v. Pigue*, 359 Ark. 373, 383, 198 S.W.3d 496, 501 (2004).   Finally, the Eighth Circuit has also stated that "[c]ausation is generally a jury question unless, in a particular case, the question is 'so free from doubt as to justify taking it from the jury.'" *Ricketts*, 36 F.3d at 779 (quoting *Trudeau v. Wyrick*, 713 F.2d 1360, 1367 (8th Cir. 1983)).

In his deposition, Hartwick stated that Atkinson called him on April 15, 2004, identified

herself as being with the Arkansas State Police, and never told him that she was merely a civilian investigator.  (Hartwick's Dep. at p. 46, l. 11-p. 47, l. 12.)  He further stated that Atkinson told him to go to the Lowery residence and "asked [him] to see if [Lowery] would let [Atkinson] have the computer." (Hartwick's Dep. at p. 25, ll. 22-23; p. 13, ll. 21-22.)  When Hartwick told Atkinson that the Lowerys would not give up the computer without a search warrant, Atkinson directed him to secure the residence and the computer and told him that Karl Byrd, a state trooper, would be on his way with a search warrant.    (Hartwick's Dep. at p. 33, ll. 13-14; p. 20, ll. 11-15.)  In Hartwick's mind, Atkinson had given him the impression that a search warrant had been secured and that Byrd would be there with it momentarily.  (Hartwick's Dep. at p. 48, l. 23-p. 49, l. 3; p. 22, l. 24-p. 23, l. 7; p. 32, ll. 21-23.)  Hartwick stated that the reason he did not leave the Lowery residence, even when requested to do so by the Lowerys, was because he was securing evidence for a search warrant. (Hartwick's Dep. at p. 20, ll. 16-22.)  Hartwick believed this search warrant was on its way for much of the afternoon and only found out otherwise when he was able to speak with Karl Byrd. (Hartwick's Dep. at p. 48, l. 23-p. 49, l. 7.)  When he learned there was no such warrant, he left the Lowery home.  (Hartwick's Dep. at p. 49, ll. 4-12.)  In his deposition, Hartwick also implied that he cooperated with Atkinson's instructions in spite of the fact that he knew he personally did not have enough evidence to constitute probable cause at least in part because he believed he was assisting the Arkansas State Police.  (Hartwick's Dep. at p. 17, l. 18- p. 21, l. 23.)

Viewing these facts in the light most favorable to Lowery, there is a genuine issue for trial on the question of causation.  If Atkinson did inform Hartwick that a warrant had been secured and that he should seize the Lowerys' computer and their residence until the warrant arrived, a natural consequence of that action would be for Hartwick to follow her instructions, particularly given his

impression that he was under the direction of the Arkansas State Police.  Because Hartwick's resulting actions may have deprived Lowery of her Fourth Amendment rights, a jury could reasonably conclude that Atkinson's actions on April 15, 2004, caused this deprivation.

As for the culpability required to trigger liability, "analysis begins by identifying the specific constitutional right allegedly infringed . . . .  The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right . . . ."  *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 1870-71, 104 L. Ed. 2d 443 (1989) (analyzing a Fourth Amendment claim, although one for excessive force rather than unreasonable search and seizure).  Here, Lowery claims that her Fourth Amendment rights were violated, and because that is "an explicit textual source of constitutional protection . . ., that Amendment . . . must be the guide for analyzing these claims."  *Id.* at 395, 109 S. Ct. at 1871.   The Fourth Amendment's standard of culpability is perhaps the easiest to identify as it is included in the text of the Amendment: "[t]he right of the people to be secure . . . against *unreasonable* searches and seizures."  U.S. CONST. amend. IV (emphasis added).  In fact, the Supreme Court has even stated that the "touchstone of the Fourth Amendment is reasonableness.  The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable."  *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S. Ct. 1801, 1804, 114 L. Ed. 2d 297 (1991) (citation omitted).  Thus, if Atkinson acted unreasonably in causing the deprivation of Lowery's Fourth Amendment rights, those actions would trigger § 1983 liability.

Once again viewing the facts in the light most favorable to the non-moving party, there is a genuine issue for trial regarding the reasonableness of Atkinson's actions.  If Atkinson did instruct Hartwick to seize the Lowerys' computer and their residence because a search warrant was on its

way when in fact no such warrant had been secured, a jury could reasonably conclude that she acted unreasonably.  Because Lowery has made an adequate showing on each necessary element of the case on which she bears the burden of proof – that there was a violation of Lowery's constitutional rights, committed by a state actor who acted with the requisite culpability and causation – Atkinson's motion for summary judgment on Lowery's § 1983 claims is denied.

### V. Qualified Immunity

Atkinson argues that, even if she is potentially liable under § 1983, she is nevertheless entitled to qualified immunity.  Qualified immunity protects a state actor performing a discretionary function from suit, so long as the alleged conduct does not violate clearly established federal rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).  In determining whether an official is entitled to qualified immunity, the Court asks: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right; and (2) whether the right was so clearly established that a reasonable official would understand that he is violating the right.  *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001); *Buckley v. Rogerson*, 133 F.3d 1125, 1128 (8th Cir. 1998).

According to Atkinson, even if she did request Hartwick to act in violation of the Fourth Amendment, her actions were reasonable given her ignorance of the law and the legal landscape surrounding child abuse investigations.  Atkinson asserts that, as a civilian investigator with the Arkansas State Police, she had no actual or alleged training in the duties of a law enforcement officer, namely, Fourth Amendment search and seizure law.  She contends that it was reasonable for her under these circumstances to rely on Hartwick, a trained law enforcement officer present at the

actual scene, to notify her if seizure offended the strictures of the Fourth Amendment.

These arguments were previously rejected in two cases similar to the facts alleged in the present case.  *See O'Donnell v. Brown*, 335 F. Supp. 2d 787 (W.D. Mich 2004); *Walsh v. Erie County Dep't of Job & Family Servs.*, 240 F. Supp. 2d 731 (N.D. Ohio 2003).  In *Walsh*, several child protection service caseworkers, among others, allegedly participated in an unlawful warrantless search of a residence in response to an anonymous report of child neglect.  *Walsh*, 240 F. Supp. 2d at 740-43.  The caseworkers sought qualified immunity, arguing that a reasonable caseworker would have believed his actions to be lawful in light of state law governing investigations of child neglect and the fact that they had not been trained in Fourth Amendment law.  *Id*. at 758-59.  The court rejected both arguments and held that lack of training in these circumstances did not sanitize otherwise unlawful action.  It stated:

> That subjective basis for [the caseworkers'] ignorance about and actions in violation of the Fourth Amendment does not relieve them of the consequences of that ignorance and those actions.  As noted, the standard is objective, not subjective: qualified immunity is related to what a reasonable official would have known, not what an individual defendant did or did not know.  Objectively viewed, a state agent whose duties take her into private homes is deemed to know about the basic constitutional constraints on her activities.

*Id*. at 759.  The court then held that the caseworkers' subjective beliefs that their actions were lawful in light of the statutory landscape governing child abuse investigations likewise failed to trigger qualified immunity, stating:

> The defendants' contention that they had been trained to act and were acting in response to the command of Ohio law is equally unavailing. . . . [T]he statute and regulations on which they claim to rely mandate investigations only.  Nothing in Ohio law compels or authorizes nonconsensual entry into a private residence on the basis of an anonymous and conclusory allegation of allegedly dangerous conditions.  Ohio law did not require the defendants to act as they did, and they cannot take refuge behind their misapplication of that law to avoid liability to the plaintiffs.

*Id*.

In *O'Donnell*, the court addressed the argument that social workers should be granted qualified immunity based on their reasonable reliance on police determinations.  There, plaintiffs alleged unlawful entry by police and child protective service caseworkers in response to a child neglect report.  *O'Donnell*, 335 F. Supp. 2d at 798-800.  The caseworkers asserted qualified immunity on the grounds that they relied in good faith on the police officers' decision to enter the home.  *Id*. at 827-29.  Relying on *Walsh*, the court rejected this argument and held that social workers were themselves bound by the Fourth Amendment.  *Id*.  The court stated:

> "Basic and applicable Fourth Amendment principles were clearly articulated and firmly embedded in our constitutional jurisprudence well before the events giving rise to this suit: government officers cannot enter a home without either prior court approval, consent, or exigent circumstances . . . . These are bedrock principles that the law properly presumes are known to every agent of the state who seeks to enter a private home – even in the name of ensuring a child's welfare."

*Id*. (quoting *Walsh*, 240 F. Supp. 2d at 758-59); *see also Rogers v. County of San Joaquin Human Servs. Agency*, 363 F. Supp. 2d 1227, 1233 n.3 (E.D. Cal. 2004) ("Social workers are held to the same [F]ourth [A]mendment standards as police officers.").  The defendants in *O'Donnell* also contended that their actions were authorized by Michigan state law.  However, the court reasoned:

> While the [pertinent] court rule and statutory provision may authorize the seizure of a child in the circumstances they describe, they do not give the police or anyone else the authority to enter a home to effect the seizure.  State statutes and regulations cannot be construed to displace the protections of the United States Constitution – even when the state acts to protect the welfare of children.

*O'Donnell*, 335 F. Supp. 2d at 801-02.

The reasoning in these cases applies here.  Atkinson's subjective ignorance of search and seizure law does not relieve her of liability.  The standard is objective, and a state official working

pursuant to a state act that mandates investigations is deemed to know the constitutional limitations imposed on those conducting the investigations.  The right of the people, even those suspected of child maltreatment, to be free from unreasonable searches and seizures – and at least generally what those rights entail – should be known to all state officers directing investigations of people and their property, particularly those who identify themselves as with the Arkansas State Police.

In this case, Lowery has provided proof that: (1) Atkinson instructed Hartwick to secure Lowery's residence (Hartwick's Dep. at p. 33, ll. 13-14); (2) Hartwick did so because Atkinson gave him the impression that a search warrant had been secured (Hartwick's Dep. at p. 48, l. 23-p. 49, l. 3); (3) Atkinson also told Hartwick that state policeman Karl Byrd was on his way with the search warrant (Hartwick's Dep. at p. 48, l. 23-p. 49, l. 3); and (4) Byrd first learned of the possibility of the warrant from Hartwick at a time substantially later than when Atkinson first told Hartwick that Byrd was on his way to the Lowery residence with the warrant (Byrd's Dep. at p. 6, ll. 2-15).  Once again viewing the facts in the light most favorable to the plaintiff, Lowery has provided proof that Atkinson induced Hartwick to secure Lowery's residence and her computer in reliance on her misrepresentation that a search warrant had been secured and an officer with the Arkansas State Police was on his way to the residence with the warrant.  Any reasonable government official would have known that these actions violated the law.

Atkinson also states in her motion that the Arkansas Child Maltreatment Act "required an investigator to interview the child, examine the environment where the child resides, and examine 'all other pertinent data.'" Without making an express argument, this statement implies that Atkinson's actions on the day in question were lawful in light of the Arkansas statutory provision. However, as noted by the *Walsh* and *O'Donnell* courts, state statutory law cannot displace the

protections guaranteed by the United States Constitution.  While the State of Arkansas has the right to authorize state action up until the point of a search or seizure, it cannot move beyond that point, even to protect the welfare of children, without a warrant, consent, exigent circumstances, or at the very least, probable cause.

Finally, Atkinson attempts to distinguish *Walsh* and *O'Donnell* from the facts of this case. She asserts that in *Walsh*, the defendants were the ones who actually made the unconstitutional entry into the home of the plaintiff and that in *O'Donnell*, the defendant was the supervisor of the individual who made the unconstitutional entry.  While these may be distinctions from the facts of this case, they are not distinctions that have a bearing on the objective standard to which Atkinson is held or on her actions in light of that standard.  A reasonable state official in Atkinson's position would have known that directing a police officer to seize a residence without probable cause and causing him to rely on a non-existent search warrant was a violation of the law regardless of whether she was present at the scene or whether the officer was under her direct supervision.  For these reasons, Atkinson is not immune from suit at this stage.

## VI. State Law Claims

Lowery also asserts state-law claims, alleging that the "actions of the Defendant . . . violated the rights of the Plaintiff secured to her by the Arkansas Constitution's provisions concerning unreasonable searches and seizures."  The defendant cites section 19-10-305 of the Arkansas Code Annotated in her defense, which states that "employees of the State of Arkansas are immune from liability and from suit . . . for damages for actions or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment."

There is no genuine dispute as to whether the defendant was acting within the scope of her

employment – as an employee of the State – during the events giving rise to this litigation.  In fact, Lowery admits in her Statement of Material Facts Not in Dispute that "Atkinson's responsibilities as a civilian investigator included investigating allegations made to the child abuse hotline to determine whether the allegations were true or unsubstantiated," which constitutes the entirety of the defendant's conduct in this case.  Therefore, the defendant is immune from liability for any claim arising under state law for all but malicious acts.

Under Arkansas law, "[t]o prove malice [for the purpose of avoiding Eleventh Amendment or statutory sovereign immunity] a plaintiff must present evidence that the state official had an [sic] 'an intent and disposition to do a wrongful act greatly injurious to another . . . a conscious violation of the law . . . .'" *Okruhlik v. Univ. of Ark. ex rel. May*, 255 F.3d 615, 627 (8th Cir. 2001) (quoting *Fuqua v. Flowers*, 341 Ark. 901, 905-06, 20 S.W.3d 388, 391 (2000)) (citations omitted). Furthermore, "a bare allegation of willful and wanton conduct will not suffice to prove malice." *Fegans v. Norris*, 351 Ark. 200, 207, 89 S.W.3d 919, 925 (2002).

The plaintiff has not expressly alleged that the defendant acted maliciously at any point during her investigation.  However, the plaintiff has alleged that Atkinson told Hartwick "that if Mrs. Lowery wanted to play hardball, that [Ms. Atkinson] would arrange to have social services remove Mrs. Lowery's children from the home and take them to state custody and had Chief Hartwick convey that information to Mrs. Lowery."  (Br. Supp. Pl.'s Resp. Mot. Summ. J. at 1.)  Drawing from the evidence before the Court, this is the only alleged statement of the defendant that could potentially be construed as malicious.  Assuming for the moment that the defendant did make this statement, if the defendant sincerely believed that she had the authority to remove the plaintiff's children from their home and that removal was in the children's best interest, then such conduct is

not "a wrongful act" or a "conscious violation of the law."

If the defendant did not sincerely hold this belief, then it may be inferred that she was either attempting to coerce the plaintiff into relinquishing her son's computer or just cause the plaintiff general emotional distress.  However, either inference depends wholly on the defendant's alleged intent that this statement be repeated to the plaintiff so that it could achieve the allegedly desired effect.  The only evidentiary support for this allegation comes from Hartwick's deposition, in which Hartwick also stated, "I honestly don't know that [Ms. Atkinson] was aiming for me to tell Ms. [sic] Lowery that." (Hartwick's Dep. at p. 24, ll. 5-6).  Thus, there is insufficient evidence to prove that Atkinson intended her statement to be relayed to Lowery, which means there is insufficient evidence to show that this particular statement was made with malice.

Moreover, this comment to Hartwick represents "a bare allegation of willful and wanton conduct [and] will not suffice to prove malice."  Once again, Lowery's Responses to Statement of Material Facts Not in Dispute admits that "Atkinson was not trained in search and seizure law and did know the parameters of Hartwick's responsibility or authority."  While this lack of knowledge might not preclude a violation of the law, it would make it difficult for Atkinson to commit "a conscious violation of the law."  Thus, the evidence is insufficient – in both quantity and quality – to allow a jury to reasonably conclude that the defendant acted with malice toward the plaintiff.  Therefore, the defendant is immune from suit for all claims arising under state law, and the defendant's motion for summary judgment as to plaintiff's state-law claims is granted.

## CONCLUSION

For the reasons stated in this opinion and order, defendant's motion for summary judgment is granted in part and denied in part.  With respect to plaintiff's claims arising under § 1983, the

17

motion for summary judgment is denied.  Defendant's motion for qualified immunity is also denied.

With respect to plaintiff's claims arising under state law, the motion for summary judgment is

granted.  Document #19.

      IT IS SO ORDERED this 23rd day of October, 2006.

_____

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE